Good morning, Judge Garth, Judge Smith and Judge Garris, good to be with you, Judge Garth is joining us as you can see via audiovisual in Connecticut, we have one matter listed this morning, that being United States of America versus Nathaniel Benjamin, is it Gannett or Gannett? It's Gannett, Your Honor.  Ms. Gannett, you may go forward, please. Thank you, Your Honor. Good morning, and may it please the Court, my name is Sarah Gannett, and I represent the appellant Nathaniel Benjamin in this matter. With the Court's permission, I would request three minutes for rebuttal. Granted. Thank you. I propose to address two of the four issues on this appeal this morning. The insufficiency of the evidence to support the gun and drug convictions, and the erroneous admission of the evidence of Mr. Benjamin's parole status. I would like to begin with the sufficiency of the evidence on the drug convictions. Mr. Benjamin's 10-year sentence for firing the gun at the shooting range was effectively doubled by the drug convictions, which were based on the marijuana and crack cocaine that was found in a home he did not own, hidden in the ceiling of a common room, to which any number of people had access, and which witnesses testified was used by many. Yeah, but he did have, he had his stereo equipment there, it was adjacent to where he did his job, you know, working on cars and all, isn't that enough? It's not enough for this reason. There were all sorts of materials found in that basement that were associated with all sorts of people. There were two or three gaming tables. There were pool tables. There was a foosball table. There was laundry in the basement. There were teenagers who came in and out of that basement on a regular basis who hung out there in the evenings. What about the ledger?  I'm sorry, Your Honor? The ledger? The ledger. I think the ledger is the only piece of evidence that the government can argue would directly tie Mr. Benjamin to the drugs. What about the nitrile gloves, nitrile gloves? Weren't they found in Mr. Benjamin's car? Well, so if I could, I'd like to address the ledger and then the gloves each separately, because I think- And certainly you're permitted to do that, but ultimately- And then together. And I think it is important to look at them separately and then together, because I think if you break it down separately, what you end up with is individually sort of ambiguous pieces of evidence, which together create- But you also have the prism of the standard of review here, which is kind of a high hill to climb. It is a high hill to climb, but the standard is that there must be evidence to support the verdict on each element beyond a reasonable doubt. So it is still a standard that requires substantial evidence, and it requires evidence beyond speculation and surmise. And it requires a decisive nexus between the defendant and the evidence. And that's, I think, where the government's case crumbles here. So starting with the supposed ledger, which actually was just a memo pad. And I want to begin here, before we actually discuss the ledger, by correcting a misstatement in the reply brief. On page 5 at footnote 5, I said that the district court sustained an objection to the 8-ball testimony. The district court sustained a number of objections to the testimony about the ledger, but the 8-ball testimony actually went unobjected to. So I want to make sure that that is clear. However, there were numerous objections sustained to the ledger testimony. And the reason was that the district court found much of that testimony to be speculative, and here's why. The ledger basically was a small notebook, a memo pad, and it had some slips of paper in it. And what the memo pad contained was all kinds of information, all kinds of notes, including notes about cars, notes about Mr. Benjamin's cell phone job. And it was undisputed that he repaired cars and that he had a legitimate job selling cell phone service plans. And it contained phone numbers, it contained names, and it contained all sorts of notations with numbers. And the testimony about the fact that it was a drug ledger was very conclusory. The agent said, I see a word, I see a number, I conclude that that refers to drugs. But the 8-ball testimony, for example. There's nothing improper about that as being opinion testimony. There's nothing improper about it. So it was evidence that the jury could properly consider. It was. But as the district court noted, it was speculative at best. And when it was surrounded by all of this record evidence about Mr. Benjamin's legitimate activities, it was not the kind of solid evidence that establishes a decisive nexus of dominion and control, which is what's required under this court's case law. And even the drug expert. Yes, Judge Carr. Ms. Gunning, I want to know what relief you are seeking here. The primary relief that you're seeking, is it that all of the convictions, including the one that he does not dispute on having a weapon, that all of them should be vacated, that some of them should be, or that what you want is a resentencing? Well, I think that what we've requested is we have not challenged, except with respect to the interstate commerce claim, we have not challenged the conviction for firing the gun at the shooting range. We have challenged the other conviction for the gun. So that conviction stands, right? That conviction would stand. Yes, Your Honor. And the other conviction for firing the gun and the drug convictions would be vacated. That's what you would like? That's what we would like. I'm glad Judge Garth asked that question, because I may have missed something at the very beginning of your argument, but I didn't hear you speak to the merger question, which is one of the major issues, I believe, in this case. And this Court has not specifically spoken to that in the past. Isn't that correct? That's correct, although I think that this Court's prior case law about 1202, which was the predecessor statute, indicates what the right results should be on the merger issue. And this Court's case law regarding merger of convictions generally speaks to that issue. Speaking only for myself, that happens to be my view, but it still remains an open question, and I'm going to be interested to hear from the government, because they may have foreshadowed that in the concession they made at page 31 of the red brief, but I do want to hear the position on that. I'd like to address, Judge Smith, your one final point regarding the ledger and then your question about the gloves, if I might, on this addition to the issue. Before you move, just about the ‑‑ if we agree with the other circuits that have decided this and agree with your argument about the merger there, we don't need to remand this, do we? I think it does need to be remanded. I think this Court's case law on merger is consistent. I mean, the only thing that is at play is that $120 special assessment. There is a $100 special assessment. There is a supervised release term and the concurrent sentence. But as this Court said in the recent case in Lewis, where the Court was looking at the violation of a statute while the defendant was on pretrial release, a district court may also determine that if a conviction is vacated, it may wish to give a different sentence, because there are now three convictions instead of four convictions. And this Court should give the district court the opportunity to assess the case with three rather than four convictions. Ms. Gannon, I'm glad that Judge Shigaris brought to your attention what the government has evidently conceded, that the $100 assessment may be the only difference which would not require a remand. And you say that a remand is necessary. Why? I think a remand is necessary because, first, the district court will need to enter a new judgment, and secondly, because the district court should have the opportunity to consider the appropriate sentence, given that there would now only be three convictions instead of four convictions. And the district court may, in its discretion, wish to enter a different sentence than the sentence that was originally imposed, given that there are now only three convictions and not four. It may not wish to do that, but that should be a decision that's left to the sound discretion of the district court. Bottom line, you would like the district court to look at this if there were a remand and all the convictions stood, save for the one felon in possession charge, to consider that there was simply a single continuing possession as opposed to two discrete possessions. That's correct. I mean, arguably, the defense counsel could make some equitable 3553 arguments that three convictions is less than four, that it shows less kind of criminal intent to possess a gun by one continuous possession than two separate times. There are reasons the judge might want to create a different type of sentence than the one that was issued originally with four convictions. Well, Ms. Gannon, the district court judge did not assess your client with a penalty because of having a gun in connection with drugs. It was having a gun in connection with being a prior felon. Isn't that so? That's correct. Yeah. That's correct. But what happens on remand if he has a different view of the possession of a gun with whatever evidence there is of the drug dealing? Well, so there's certainly always a risk when the defendant requests a remand for resentencing. The judge could look at the resentencing either way. I'm sure he could. But our position would be on resentencing that three convictions is less than four and that the judge should consider downwardly adjusting the sentence. Thank you. With respect to the ledger, I wanted to add one point, which is that even the expert in addressing the ledger said that he would not rely on the ledger alone in forming his opinion. He said he would also need to rely on other facts, including the possession of the gun, which it's our position was solely possessed by Mrs. Spree, as evidenced by her ownership and her statements that she kept it on her at all times, which the government stated in closing argument they found to be, quote, extremely honest. By the presence of the dog, for which there was testimony he was the family pet, and then by the gloves, which is an advertence to the defendant's parole status. And so if even the expert has to advert to the parole status in order to come to his opinion, I think that demonstrates how weak the evidence is overall. There's a cloud of suspicion in this case about Mr. Benjamin, certainly. But it's not evidence beyond a reasonable doubt until it's layered with his parole status. And it's only the parole status. The parole status was never objected to, was it? It was objected to prior to trial. There was a 403 objection made prior to trial in a motion in Lemonet, which was overruled by the court. And then there were repeated references during the course of trial to the parole status, many of which were references that defense counsel denounced. Defense counsel did not introduce the parole status during trial. But once it was introduced, defense counsel did try to work with it. That is concededly true. But the way that it was used at trial was to suggest that because he was on parole, he had a propensity to be the drug dealer, to be the drug owner in that house. He had a propensity to have used these drugs, used these gloves, for instance, not as an auto mechanic, not to clean up the house, but to package drugs. Interestingly, I don't think there was ever a cautionary instruction. There was not. Nor was there one requested by defense. There was not. That's odd. Judge Garth, anything further of Ms. Gannett? Nothing, Judge. Thank you. All right, thank you. We'll have you back on rebuttal, Mr. Henson. Mr. Henson, could we start out on the merger question? Since the government has indicated in its brief that the government assumes without a decision of this court sole holding that the crime of possession of a firearm by a convicted felon is a continuing offense, that this court, if it hasn't already done so, should adopt the position of, I believe, the Sixth and the Ninth Circuits, several of our sister courts. Several circuits. Eleventh, Sixth, yeah, Ninth. That that should be the applicable principle. Yes, I think that's the appropriate place to start for oral argument. Judge Garth and Judge Segaris, I'm Eric Henson. I represent the United States as aptly. Judge Smith, you are correct. Our view is that 922G1, felon in possession, is a continuing offense. If the court finds that the two counts merge because this defendant's possession on this record was not interrupted, then the remedy, which we look to the Tan opinion for by Judge Segaris, is for the court to remand to the district court to reform the judgment. That is, to merge the counts, making the decision which count to set aside and which would remain, and then there would not be two concurrent sentences. There would be a single sentence on the 922G1. So that's the remedy. So do I assume that you concede that there is no interruption? We do not. That's where we get the benefit of plain error. On this record, we were able to prove his possession at the firing range. What's the error that is plain? The error that's plain is if this court rejects our contention that the record establishes interruption, and the interruption is established in this way, there's no evidence whatsoever that the gun ever left the house or that Benjamin, when he was away from the house, directed the control of it. What does the evidence show? And more appropriately, what did the jury conclude based on the evidence? Was the first instance of discrete actual possession by Mr. Benjamin? The jury was asked in its verdict whether he possessed it on the date of the firing range, which if I recall was the 14th, which was the day after it was purchased, and whether he possessed it on the day that he was arrested. When it was found under the bed? Yes, Your Honor. So the jury was never asked the question because the defense didn't allege it before the case went to the jury. Explicitly, was his possession between those two dates interrupted or not? Why should we not conclude on this record that there was a continuing period of constructive possession during those two points in time you've just made reference to? That, Your Honor, seems to me the difficulty of the government's position, which is that our evidence is too strong, not too weak, to support the conviction when one comes to the merger side of it. But on this record- I'm not sure I follow you on that. You have no evidence, you adduced no evidence of actual possession during those temporal points, did you? We adduced actual possession on the date of the firing. Right. And we proved constructive possession on the date that the defendant was arrested. So why would that not have provided a record of circumstantial evidence from which an ongoing period of actual and then constructive possession continued? It would support that had we charged a continuing offense, which we frequently do in these circumstances. For example, if we had chosen to charge the case against both the defendants and charged her as a straw purchaser, we would have charged him with possession from the date the gun was acquired until it was seized. We charged the case based on the evidence we had, which left a gap from those two dates. So the government gets a benefit from the gap in the evidence? The government gets the benefit given that we're under plain error. If the government has the burden of proving, and this is not an element. The question is merger. If the government has to prove constructive possession or a time in which there was no constructive possession. Why isn't it the constructive possession here and the principles that are centuries old, the principles of law that are applicable for the plain error inquiry? It would seem to me that the existence of an application of constructive possession principles are about as plain as they can be. They are. And we proved his constructive possession on the date in question. If the court finds that the record establishes also his continuing constructive possession, then we agree that the remedy that the defendant seeks, that is, the merger of those offenses, should be applied. But does the record support your, I guess, assertion that there was an interruption somewhere? I mean, I understand the jury wasn't charged to find that, but just out of curiosity, does the evidence show it? The Mrs. Spree, who was the owner of the gun, exhibited at the time it was purchased a desire to have some control over it. For example, the defendant tried to persuade her to purchase another gun. The defendant tried to persuade her to get a shoulder holster, which she refused to do, which demonstrated that she was prepared to stand up to him. There is no evidence that the defendant ever removed the gun from the house, and there's no evidence that the defendant ever attempted, when he was away from the house, to direct her control of it. Was there any evidence that he was away from the house in the four or five days? No, there's no evidence. I have to rely on an absence of evidence. There is no affirmative evidence that the gun was out of his constructive possession. For example, that she gave it to somebody else who returned it to her. We did not have that. With respect to the remaining arguments, unless the court directs otherwise, we'll rely on our brief. Judge Gareth? I have no questions, Mr. Adams. Thank you. Thank you, Your Honor. Ms. Gannett, the rebuttal. Your Honors, with respect to the merger issue, I think that the idea that the defense has to give notice that the felony possession statute is a continuing offense does not make sense in light of this Court's prior case law. I think that's known to the government and understood that those offenses should merge at the time of sentencing. It's unfortunate that that wasn't discussed at the time of sentencing, but that should be considered plain error at this point. How do you respond to the government's argument, which I guess goes something like this? The jury wasn't charged to find an interruption. Now the defense is arguing this. What do we do? I don't think the government can have it both ways. I mean, the theory that the government presented at trial was a joint possession theory. If the government wanted to argue that he possessed it on two discrete days discreetly and that those should form two separate convictions, that's the theory that they should have presented, knowing that felony possession is a continuing offense and that that's the backdrop of the case law. That's not the way they presented the case. They presented a joint possession theory. That was the way that it was argued by both the prosecutor and the defense at trial. The defense argued that he didn't possess it at all ever. I think the record evidence supports that. As we've argued in our brief, she intended to possess it solely herself the entire time. Either he had dominion and control over that gun the entire time or he didn't. The idea that he was able to exert it in that one moment, I gather that's their theory, in that one moment. Now on appeal they're saying he asked her to take it to the basement, and that was his exertion of control in that one moment. Either he controlled it and had the ability to exercise dominion and control over it the entire time or he didn't. And so either there's sufficient evidence to establish that he did. Or there isn't. Either actually or constructively. One or the other. And it was a continuing offense from the date that the gun was purchased until the day that the search was conducted. And that's consistent with the case law from the other circuits on joint possession and merger. The cases involving the gangs where the guns are shared between the gang members and the gun may be at another gang member's home. But when they're shared by the gang members, even if one gang member is not present, he still exercises dominion and control over that weapon. That's the Ellis case and the Rivera case, which are cited in our brief. And it's also consistent with the Harodner case where the defendant dropped the gun at the repair shop and still exercised dominion and control over it. It's the same situation. I would also note that this court, I don't think, has ever reformed a judgment at the circuit level. It's always remanded for the district court to reform the judgment. And I would point the court to Lewis at 660 F3rd 196 Note 5, which is cited in our reply brief at page 11, where the court noted that the district court, in deciding the proper sentence, may have been impacted by the fact that Lewis was convicted of two counts rather than one and may now wish to impose a different term of imprisonment, which we would permit on remand. And we would ask for that same courtesy to the district court in this case. Thank you very much. Thank you. Thank you very much, counsel. The case was well argued. It presents several interesting issues for us. Mr. Henson, I almost slipped at one point when I fortunately made reference to the government's evidence. I almost referred to the Commonwealth's evidence, thinking of you in an earlier incarnation when I was in an earlier incarnation. I might have slipped back to those times, too, Your Honor, but not because I regret being here. It probably happens from time to time. Thank you, Your Honor. Thanks very much.